TRINETTE G. KENT (State Bar No. 222020)
10645 North Tatum Blvd., Suite 200-192
Phoenix, AZ 85028
Telephone:  (480) 247-9644
Facsimile:  (480) 717-4781
E-mail: tkent@lemberglaw.com

Of Counsel to
Lemberg Law, LLC
A Connecticut Law Firm
43 Danbury Road
Wilton, CT 06897
Telephone:  (203) 653-2250
Facsimile:  (203) 653-3424

Attorneys for Plaintiff,
Eric Washington

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| Eric Washington, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | **FOR VIOLATIONS OF:** |
| | **  1. THE TELEPHONE CONSUMER** |
| Intercontinental Hotels Group Resources, Inc., | **    PROTECTION ACT** |
| Defendant. | **JURY TRIAL DEMANDED** |

Plaintiff, Eric Washington (hereafter "Plaintiff"), by undersigned counsel, brings the following complaint against Intercontinental Hotels Group Resources, Inc. (hereafter "Defendant") and alleges as follows:

## JURISDICTION

1.     This action arises out of Defendant's repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

2.     Jurisdiction of this Court arises under 47 U.S.C. § 227(b)(3) and 28 U.S.C. § 1331.

3.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this district and/or where Defendant transacts business in this district.

## PARTIES

4.     Plaintiff is an adult individual residing in Pasadena, California, and is a "person" as defined by 47 U.S.C. § 153(39).

5.     Defendant is a Delaware business entity located in Atlanta, Georgia, and is a "person" as the term is defined by 47 U.S.C. § 153(39).

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

6.     The TCPA regulates, among other things, the use of automatic telephone dialing systems ("ATDS").

7.     Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS to a cellular phone without prior express consent by the person being called or an emergency purpose.

8.     47 U.S.C. § 227(a)(1) defines an ATDS as equipment having the capacity–

(A)     to store or produce telephone numbers to be called, using a random or sequential number generator; and

(B)     to dial such numbers.

2

9.     According to the Federal Communications Commission ("FCC"), an ATDS "encompass[es] any equipment that stores telephone numbers in a database and dials them without human intervention." *Nunes v. Twitter, Inc.*, No. 14-cv-02843-VC, 2014 WL 6708465, at *1 (N.D. Cal. Nov. 26, 2014); *Fields v. Mobile Messengers Am., Inc.*, No. 12-cv-05160-WHA, 2013 WL 6774076, at *3 (N.D. Cal. Dec. 23, 2013) (concluding there were genuine disputes of material fact regarding whether messages were sent using an ATDS where plaintiffs alleged that the equipment used functioned similarly to a predictive dialer in that it received numbers from a computer database and dialed those numbers without human intervention.").

10.     "Human intervention" means significant human involvement in the dialing of a number, and any human involvement with phone number compilation is irrelevant.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02–278, Report and Order, 18 FCC Rcd. 14014,  ¶ 132 (2003) ("2003 FCC Order") ("The basic function of [ATDS], however, has not changed—the capacity to dial numbers without human intervention." (emphasis added and omitted)); *Moore v. Dish Network L.L.C.*, 57 F. Supp. 3d 639, 654 (N.D.W. Va. 2014) ("[I]t is irrelevant under the FCC's definition of a predictive dialer that humans are involved in the process of creating the lists that are entered into the Campaign Manager software.").

11.     Moreover, the FCC has made clear that it is a system's capacity to dial randomly or sequentially that determines whether it is an ATDS, not its "present ability." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, CG Docket No. 02-278, FCC 15-72, at ¶ 15 (July 10, 2015) ("2015 FCC Order"); *see also Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) ("[T]he clear language of the TCPA 'mandates that the focus be on whether the equipment has the capacity to store or produce telephone numbers to be called, using a random or sequential number

3

COMPLAINT FOR DAMAGES

generator.'" (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009))).  In other words, "even when the equipment presently lack[s] the necessary software, it nevertheless [may have] the requisite capacity to be an autodialer." 2015 FCC Order, at ¶ 16.

12.    A piece of equipment can possess the requisite "capacity" to satisfy the statutory definition of "autodialer" even if, for example, it requires the addition of software to actually perform the functions described in the definition. 2015 FCC Ruling, at ¶ 18.

13.    The FCC has clarified that text messages qualify as "calls" under the TCPA:

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number.  Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the party is charged."  This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.

2003 FCC Order, at ¶ 165; *see Satterfield*, 569 F.3d at 953.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

**A. Text Messages Sent to Plaintiff**

14.    Defendant is a hotel company with more than 5,000 hotels in 100 countries.

15.    In 2013, Defendant began sending text messages to Plaintiff's cellular telephone at number 818-XXX-4556 (hereafter the "Number").

16.    Defendant placed the text messages from number "545-45," an abbreviated telephone number known as an SMS short code licensed and operated by Defendant or one of its agents on its behalf.

4

17.    The text messages were placed using an automatic telephone dialing system ("ATDS").

18.    Defendant's text messages to Plaintiff were template-based.  The text messages consisted of a hotel name, "Conf# [XXXXXXX]," an address for a hotel, a date range, and a phone number:



19.    Defendant's text messages were repetitive.  On a regular basis, Defendant sent Plaintiff over 10 identical text messages to Plaintiff, one after another.

20.    Defendant's text messages were impersonal to Plaintiff.  He had not registered to stay in the hotels referenced in the text messages.  Indeed he had not provided Defendant with his Number, nor did he provide his prior express consent to receive Defendant's autodialed text messages.

21.    Starting in February of 2013, Plaintiff repeatedly called Defendant, spoke to Defendant's agents, and requested that Defendant cease sending text messages to his cell phone.

5

COMPLAINT FOR DAMAGES

22.     Moreover, Plaintiff repeatedly responded to the text messages themselves requesting they "stop."  In reply, Defendant sent text messages stating that its "service" had been canceled and Plaintiff would no longer receive messages:



23.     However, Defendant did not stop.  Defendant continued to send text messages to Plaintiff's cell phone despite (1) that Plaintiff had not provided his number in the first place, (2) his multiple phone call requests that Defendant cease, and (3) his multiple text message requests that Defendant cease, which Defendant's system acknowledged, but then disregarded.

24.     Defendant's text messages directly interfered with Plaintiff's right to peacefully enjoy a cell phone service that Plaintiff paid for, and caused Plaintiff a significant amount of anxiety, frustration and annoyance.

25.     The messages from Defendant to Plaintiff were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

6

COMPLAINT FOR DAMAGES

## B. Allegations Regarding Capacity of Defendant's System

26.     The text messages sent by Defendant to Plaintiff's cell phone were sent with an ATDS as defined by 47 U.S.C. § 227(a)(1) and the FCC, in that Defendant acquired Plaintiff's Number, stored it in a database connected to its telephonic or computer system, and then used its system to send text messages to Plaintiff's cell phone number automatically and without human intervention.

27.     No human was involved in the sending of Defendant's text messages to Plaintiff.

28.     Defendant's system includes a computerized protocol for creating automated text messages programmed to appear customized.

29.     A template for the messages sent to Plaintiff appears in Defendant's system in the following or a substantially similar form: "[Hotel name] Conf# [xxxxxxx]: [hotel address] [date range] [hotel phone number]."

30.     Using programming code, and replacing values, Defendant's computer programs then convert the template message into messages like those received by Plaintiff.  Thus, what appears to be a customized message is, in fact, done through a computer algorithm with no human involvement.

31.     Like any computer system, Defendant's computer-based text messaging system, which involves many computer servers equipped with multiple software applications, has the capacity to generate random numbers. *See* https://en.wikipedia.org/wiki/Pseudorandom_number_generator (last visited Apr. 20, 2016).

32.     Defendant's computer-based system likewise has the capacity to generate sequential numbers.

33.     For instance, it has the capacity to take any number, for instance 310-555-1212, consider it as a 10-digit integer 3105551212, add 1 to it, and get a new sequential phone number.

7

COMPLAINT FOR DAMAGES

34.     Defendant's system has the capacity to store and dial the random or sequential numbers it generates just like it stored and dialed Plaintiff's number.

35.     In the unlikely event that Defendant's system does not already have the capacity to generate random or sequential numbers, that capacity can be trivially added.

36.     The following computer programming 'PHP' code could be added to Defendant's system to generate random numbers:

```php
1   <?php
2
3   for ($randomNumber = mt_rand(1, 9), $i = 1; $i < 10; $i++) {
4       $randomNumber .= mt_rand(0, 9);
5   }
6
7   var_dump($randomNumber);
```

37.     This simplified PHP code would generate random numbers in Defendant's ATDS system.

38.     The Code would generate random numbers as follows:

```
1   string(10) "3446780111"
```

39.     The ability to generate sequential numbers could also easily be added to Defendant's system if it does not have it currently.

40.     For instance the following code could be added:

```php
1   <?php
2
3   $howManyYouNeed = 100;
4   $phonePrefix = 212;
```

8

COMPLAINT FOR DAMAGES

```
 5   $fromNumber  = 5551212;

 6

 7   for ($i = 0; $i < $howManyYouNeed; $i++) {

 8       $phoneNumber = sprintf('%3d-%07d', $phonePrefix, $fromNumber+$i);

 9       print $phoneNumber . "\n";

10   }

11

12   ?>
```

41.    The following sequential numbers would be generated:

```
212-5551212

212-5551213

212-5551214

212-5551215

212-5551216

212-5551217

212-5551218

212-5551219

212-5551220

212-5551221

212-5551222

212-5551223

212-5551224

212-5551225

212-5551226

212-5551227

212-5551228

212-5551229

212-5551230

212-5551231

212-5551232
```

9

COMPLAINT FOR DAMAGES

# COUNT I

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *et seq.*

42.     Plaintiff incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

43.     The TCPA prohibits Defendant from using, other than for emergency purposes, an ATDS when dialing Plaintiff's Number absent Plaintiff's prior express consent to do so.  *See* 47 U.S.C. § 227(b)(1).

44.     FCC regulations promulgated under the TCPA specifically prohibit Defendant from using an ATDS to dial Plaintiff's Number for the purpose of advertising or telemarketing absent Plaintiff's prior express written consent.  *See* 47 C.F.R. § 64.1200(a)(2).

45.     FCC regulations promulgated under the TCPA require that Plaintiff's consent be pursuant to a written agreement, signed by the Plaintiff, which contains Plaintiff's unambiguous assent to receiving ATDS calls from Defendant.  *See* 47 C.F.R. § 64.1200(f)(8).

46.     Defendant sent text messages to Plaintiff's Number using an ATDS without Plaintiff's consent in that Defendant either never had Plaintiff's prior express consent to do so or such consent was effectively revoked when Plaintiff requested that Defendant cease all further text messages.

47.     Defendant continued to willfully send text messages to Plaintiff's Number using an ATDS knowing that it lacked the requisite consent to do so in violation of the TCPA.

48.     Plaintiff was harmed and suffered damages as a result of Defendant's actions.

49.     The TCPA creates a private right of action against persons who violate the Act.  *See* 47 U.S.C. § 227(b)(3).

COMPLAINT FOR DAMAGES

50.     As a result of each text message made in violation of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages.

51.     As a result of each call made knowingly and/or willingly in violation of the TCPA, Plaintiff may be entitled to an award of treble damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant for:

A. Statutory damages of $500.00 for each call determined to be in violation of the TCPA pursuant to 47 U.S.C.§ 227(b)(3);

B. Treble damages for each violation determined to be willful and/or knowing under the TCPA pursuant to 47 U.S.C.§ 227(b)(3);

C. Such other and further relief as may be just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

DATED:  May 27, 2016                    TRINETTE G. KENT

By: _/s/  Trinette G. Kent_
Trinette G. Kent, Esq.
Lemberg Law, LLC
Attorney for Plaintiff, Eric Washington

11