# United States District Court
# Central District of California

ERIC WASHINGTON, AN INDIVIDUAL,

    Plaintiff,

v.

SIX CONTINENTS HOTELS, INC., A DELAWARE CORPORATION,

    Defendant.

Case No. 2:16-CV-03719-ODW-JEM

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS [29]**

## I. INTRODUCTION

Plaintiff, Eric Washington, filed his initial complaint on May 27, 2016, alleging that Defendant Six Continents Hotels, Inc., violated the Telephone Consumer Protection Act ("TCPA") by sending numerous unsolicited text messages to his phone. (*See* Compl., ECF No. 1.) On January 9, 2017, the Court stayed the case pending the outcome in in *ACA International v. FCC*, a case in Court of Appeals for the District of Columbia Circuit representing a consolidation of challenges to a 2015 FCC declaratory ruling. (ECF No. 22.) *ACA International* was decided on March 16, 2018, and the Court lifted the stay in this case on April 4, 2018. (ECF No. 28.) Following the D.C. Circuit's decision, Defendant moved to dismiss Plaintiff's Second Amended Complaint

("SAC") (ECF No. 13), on May 21, 2018, on the grounds that Plaintiff's allegations do not constitute a claim under the TCPA. (Mem. of P & A in Supp. of Mot. to Dismiss ("Mot."), ECF No. 29.) Presently before the Court is Defendant's Motion to Dismiss.[1] For the reasons discussed below, the Court **DENIES** Defendant's Motion to Dismiss.

## II. BACKGROUND

The TCPA imposes liability for text messages sent using an "automatic telephone dialing system" ("ATDS"). 47 U.S.C. § 227(b)(1)(A)(iii); *see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009) (holding that a text message constitutes a "call" under the TCPA). The TCPA defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The Federal Communications Commission ("FCC")—which has the authority to "prescribe regulations to implement the requirements" of the TCPA—has liberally construed the first requirement in declaratory rulings dating back to 2003. *Id.* § 227(a)(2). In 2003, the FCC determined that equipment constitutes an ATDS if it simply has the "capacity" to generate numbers and dial them without human intervention, regardless whether the numbers called were actually randomly or sequentially generated. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14,014, 14,092 ¶ 133 (2003) ("2003 ruling"). In 2015, the FCC further clarified that the equipment need not have the "present capacity" to generate or dial random or sequential numbers; it need only have the "potential" ability to do so. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7,961, 7,974 ¶ 16 (2015) ("2015 ruling").

Moreover, the FCC broadened the definition of what equipment constituted an ATDS in the 2003 ruling by affirmatively stating that a predictive dialer was an ATDS.

---

[1] Having carefully considered the papers filed in support of and in opposition to the instant Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

2003 ruling, 18 F.C.C. Rcd. at 14,093. The FCC defines a predictive dialer as equipment which, "has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." 2015 ruling 30 F.C.C. Rcd. 7,961 (quoting 2003 ruling, 18 F.C.C. Rcd. 14,014). This differs from the statutory definition of an ATDS because it does not require the use of a sequential or random number generator. This broader definition was affirmed most recently in the 2015 ruling. 2015 ruling, 30 F.C.C. Rcd., at 7972 ("We also reiterate that predictive dialers . . . satisfy the TCPA's definition of "autodialer.").

The 2015 ruling was challenged in *ACA International v. FCC*, where the D.C. Circuit held that the standard for equipment qualifying as an ATDS where the equipment only had the *potential* ability for random or sequential number generation was overbroad, and struck that standard. 885 F.3d 687 (D.C. Cir. 2018). The court also found that the FCC's inclusion of predictive dialers as ATDSs created contradictory definitions of an ATDS. *See id.* at 702–03. Namely, the court found that the FCC rulings established that equipment *must* be able to store or produce telephone numbers using a random number generator to qualify as an ATDS. *Id.* Yet, by declaring that a predictive dialer was an ATDS, the FCC permitted equipment without random number generation to be considered an ATDS. The court found these orders contradictory, lacking clarity and therefore set them aside. *Id.*

Here, the plaintiff argues that the *ACA International* court set aside only the 2015 ruling, and that previous rulings by the FCC remain in effect and binding upon this Court. (Opp'n 10–11, ECF No. 32.) These previous rulings established that a predictive dialer qualifies as an ATDS, and Plaintiff alleges that Defendant's equipment satisfies the requirements of a predictive dialer, therefore granting plaintiff a claim under the TCPA. (*See id.* at 6–7, 12–14.)

Conversely, Defendant argues that the *ACA International* court set aside the broad definition of an ATDS used by the FCC in rulings since 2003, necessitating a return to the plain language of the statute. (Mot. 5–9.) Defendant further argues that

Plaintiff alleges no facts that show that Defendant's equipment satisfies the plain text definition of an ATDS. (*Id.* at 10–13.)

### III. LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Determining whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citations omitted). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The court must dismiss a complaint that does not assert, or fails to plead sufficient facts to support, a cognizable legal theory. Fed. R. Civ. P. 12(b)(6); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

### IV. DISCUSSION

**A. The Court is bound by decisions of the District of Columbia Circuit**

The courts of appeal have the power to review the declaratory rulings of the FCC. 28 U.S.C. § 2342(1). As an agency can make rulings that have nationwide effect, the finding of a court of appeals in reviewing an agency ruling also has nationwide precedential effect. *See Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1057 (9th Cir. 2008) (finding that pursuant to the Hobbs Act, district courts are bound by a circuit court ruling on an FCC decision, even when outside of the circuit). In the instant case, petitions for review were filed in more than one court of appeals, and as a result, the Judicial Panel on Multidistrict Litigation designated the D.C. Circuit as the proper venue to hear the review, consolidating the petitions from the other circuits pursuant to

28 U.S.C. § 2112(a)(3). Therefore, the decision by the D.C. Circuit in this case has binding precedential effect nationwide.

**B.** *ACA International*

As a threshold matter, the decision of the court in *ACA International* reaches previous orders filed by the FCC, and not just the 2015 order immediately at issue. The court explicitly states: "[a]ccording to the Commission, because there was no timely appeal from those previous orders, it is too late now to raise a challenge by seeking review of a more recent declaratory ruling that essentially ratifies the previous ones. We disagree." *ACA Int'l v. FCC*, 885 F.3d at 701. This is, in part, because "[t]he agency's prior rulings left significant uncertainty about the precise functions an autodialer must have the capacity to perform." *Id*. Since the 2015 ruling reaffirms prior orders regarding the definition of an ATDS, removing the 2015 ruling would not remedy the uncertainty of prior rulings.

The D.C. Circuit in *ACA International* set out to answer two questions regarding the TCPA's definition of an ATDS: "(i) when does a device have the 'capacity' to perform the two enumerated functions; and (ii) what precisely are those functions?" *Id*. at 695. On the first question, the 2015 FCC ruling expressed a formulation of capacity that was very broad and included "potential functionalities" not just "present ability." *Id*. The court found that this formulation had no limit, would include every common smartphone as an ATDS, and was unequivocally set aside. *Id*. at 689.

Somewhat less clear, and indeed what the parties here dispute, is how the D.C. Circuit answered its second question. The court found that the FCC's 2015 ruling (which reaffirmed previous rulings): "indicates in certain places that a device must be able to generate and dial random or sequential numbers to meet the TCPA's definition of an autodialer, [but] it also suggests a competing view: that equipment can meet the statutory definition even if it lacks that capacity." *ACA Int'l*, 885 F.3d. at 702. While either definition would be permissible in the court's opinion, the FCC cannot espouse competing interpretations "consistent with reasoned decisionmaking." *Id*. at 703. As a

result, the DC Circuit found it "must therefore set aside the Commission's treatment of those matters."[2] *Id.*

Plaintiff quotes *Reyes v. BCA Financial Services, Inc.*, at length to support the proposition that the D.C. Circuit set aside only the 2015 ruling, while leaving the earlier rulings' definitions of an ATDS in place. 2018 WL 2220417 (S.D. Fla. May 14, 2018); (Opp'n 9–10.) This argument is unavailing. By its plain language, the court in *ACA* did not set aside the 2015 ruling, but rather "the Commission's treatment of [which functions qualify a device as an autodialer]." *ACA Int'l*, 885 F.3d. at 703. Indeed, the FCC's declaration from the 2003 ruling (and affirmed in the 2008 and 2015 rulings), that a predictive dialer is an ATDS is what the D.C. Circuit found inconsistent with the FCC's other definitions of an ATDS. Eliminating the 2015 ruling would do nothing to remedy the lack of clarity the D.C. Circuit found at issue. As the court in *ACA* did not set aside a ruling, but rather the FCC's treatment of the definition of an autodialer, this treatment was set aside from all previous FCC rulings. *See id.* In short, beginning with its 2003 ruling that a predictive dialer qualified as an autodialer, the FCC has espoused competing definitions of the qualities an autodialer must possess. It was the clear intention of the D.C. Circuit to set aside all such competing definitions until the FCC choses to clearly establish that the "must be able to generate and dial random or sequential numbers" standard is no longer a requirement for a device to be considered an ATDS.

In conclusion, the Court finds that the D.C. Circuit's decision reached all of the aspects of FCC rulings which allowed for "potential capacity" to generate random or sequential numbers and which established a predictive dialer as an ATDS. Therefore, the D.C. Circuit significantly narrowed the definition of an ATDS. However, the Court finds that the allegations of Plaintiff's SAC sufficiently alleges that Defendant's system is an ATDS, even under the plain text statutory definition, as discussed below.

---

[2] By 'matters' the DC Circuit is referring to both the definition of a predictive dialer as an ATDS, and the discussion of potential capacity of autodialer function, discussed above. *ACA Int'l*, 885 F.3d. at 703.

**C. The Allegations of Plaintiff's SAC**

Although the D.C. Circuit significantly narrowed the acceptable definition of an ATDS, Plaintiff alleged sufficient facts that Defendants equipment was an ATDS to survive a motion to dismiss. The TCPA defines an ATDS as "equipment which has the capacity-- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(1). Plaintiff alleges:

- "Defendant acquired Plaintiff's number, stored it in a database connected to its telephonic or computer system, and then used its system to send text messages to Plaintiff's cell phone number automatically and without human intervention." (SAC ¶ 26.)
- "Defendant's computer-based text messaging system . . . has the capacity to generate random numbers." (SAC ¶ 31.)
- "Defendant's computer-based system likewise has the capacity to generate sequential numbers." (SAC ¶ 32.)
- "Defendant's system has the capacity to store and dial the random or sequential numbers it generates just like it stored and dialed Plaintiff's number." (SAC ¶ 34.)

Plaintiff is not alleging a potential or future capacity for random or sequential number generation, but rather is alleging that the Defendant's system currently has such ability. He also alleges that Defendant's system stored and dialed his number without human intervention. Plaintiff is not merely "recit[ing] the elements of a cause of action, supported by conclusory statements." *Iqbal*, 556 U.S. at 678. Instead, he alleged the specific factual aspects of Defendant's system that qualified it as an ATDS, as well as providing factual examples of the functionality of this system that support the inference that such a system is an ATDS. For instance, Plaintiff alleged that the text messages he received were repetitive, and he would receive them in identical blocks. (SAC ¶19.) The messages were impersonal to Plaintiff, and template based. (SAC ¶¶ 18, 20.)

Plaintiff additionally requested multiple times that the messages stop, and despite receiving assurance that they would, the messages did not stop. (SAC ¶¶ 21–23.) Courts have frequently found similar factual allegations regarding the nature of messages received to indicate the use of an ATDS. *See Flores v. Adir Int'l, LLC*, 685 F. App'x 533 (9th Cir. 2017) (reversing the district court's grant of a motion to dismiss, on the grounds that allegations of identical, generically formatted text messages, which did not reference the plaintiff, and did not stop even after the plaintiff requested, and was promised they would stop, were sufficient to show use of an ATDS); *Gould v. Farmers Ins. Exch.*, 288 F. Supp. 3d 963, 965 (E.D. Mo. 2018) ("Particularly given the repetitive, generic, and impersonal nature of the messages, it is plausible that Farmers used an ATDS."); *Ueckert v. State Farm Bank, F.S.B.*, No. 5:17-CV-05094, 2017 WL 3981136, at *2 (W.D. Ark. Sept. 11, 2017) (holding TCPA plaintiff sufficiently alleged ATDS even where aside from alleging defendant used an ATDS, he only provided "sparse" factual support in the form of allegations relating to the "frequency, unpredictability, and the nature of [the] calls"); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130 (W.D. Wash. 2012) ("Plaintiff's allegation regarding the generic content and automatic generation of the message is sufficient to infer the use of an ATDS.").

Additionally, Plaintiff sufficiently alleged that the texts were sent without human intervention. A plausible inference can be drawn from the repetitive, impersonal nature of the messages to find that they were generated by a computer system without human involvement. Defendant argues that the messages were trigged by a human making a hotel reservation, and therefore the system should be thought of as requiring human involvement. (Mot. 9–10.) This argument fails for two reasons. First, Plaintiff is correct to point out that the test for human involvement looks to the time a call or message is sent or dialed, not what might have happened earlier to enter the phone number into the system. (Opp'n 16 (citing *Morse v. Allied Interstate, LLC*, 65 F. Supp. 3d 407, 410 (M.D. Pa. 2014)).) Moreover, even if Defendant's assertion was correct, and the text messages were trigged by reservations, this would only account for the first

message of each version received by Plaintiff. As Plaintiff alleged receiving up to ten copies of identical messages, unless each individual human was making ten reservations, these duplicative messages strongly support an allegation of automated messaging. (SAC ¶ 19.)

Thus, construing these factual allegations as true and in the light most favorable to the Plaintiff, and, using the Court's "judicial experience and common sense," the Court finds that Plaintiff has alleged sufficient facts to establish a claim under the TCPA that the Defendant's system is an ATDS.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **DENIED** (ECF No. 29).

**IT IS SO ORDERED.**

August 24, 2018

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**